Good morning your honor my name is Michael Bush I represent Ron Burdette this is a an eighth amendment case coming out of Butte County it arises out of a an incident that occurred in Butte County Jail in which Mr. Burdette who had recently arrived to the jail was taken off of prescription medicine that had been taken for a long time within a time frame recommended by our notice by the manufacturer of the drug Mr. Burdette had a predictable seizure he fell hit his head on the cement and now has permanent brain injury when he had the seizure was he not on imprimine he was on imprimine yes he was so it wasn't from withdrawal and both those drugs have possibility seizures so he was on a different drug but he was on a drug which was appropriate wasn't it for his for his illness no it was an inappropriate drug it was an inappropriate drug the drug that he had been taking for years was Xanax and that was the inappropriate in what sense you mean it was malpractice to prescribe it not so much in that sense although that comes up as an issue in these types of cases no but you have to show more than malpractice this cannot I mean if this is a malpractice case it's not a practice case you're out I understand that and I agree with that and I think that's a good standard but what evidence but what evidence is there in the record it's it's true that between the two drugs there's some evidence in terms of I think there was some testimony or there was admissible evidence that had to do with that Xanax was the better drug now than imprimine as a but the only thing I didn't see anything that you put in the record that showed that there was some incredible risk of that I think there was some reference from the on there was that that it was a point four percent risk but that wasn't even that was not put you didn't know what your record was devoid of showing that there was some incredible risk of that is can you the record shows that the manufacturer of the Xanax drug and the doctor is aware of what the manufacturer says there's a point zero four percent risk of seizure from tapering off of the Xanax drug if you taper it off too quickly that's in the record the but that was introduced by the appellees correct well we agree with it we agree the question is how do you qualify that and that that comes to the first point that we raised on this substantial risk or an excessive risk and it's in this in this regard I would like to just have the court deal with something that's very confusing point zero four in the in the recommendation from the manufacturer is a substantial number it's not an excessive number by any means but it is substantial it's the only risk factor listed in the whole category of countering things that could go wrong it's the only one that has a percentage it clearly indicates that the manufacturer thinks that the seizure at point zero four is substantial enough to be told about its percentage but point zero four would not be excessive the court available for doctors to use and it's not I don't think it's well below the standard of care doesn't really matter here because you don't want this to be a med mal case that was not a good thing for your client but you know here's what we think why is that indifference well here's what I think is why it comes to that anytime you're looking at a case like this you're gonna have the possibility of negligence medical malpractice and at what point does that become deliberate indifference and what I believe is the situation is that when you see something that makes you think there might be negligence or or medical malpractice that's a warning sign to take a deeper look and to see what the motivations are to see if in fact in addition to negligence or malpractice we rise to the level of deliberate and why don't you answer this question this is a summary judgment what can you point to in the summary judgment record that would support an inference of deliberate indifference the the history and I pointed out in the brief that this doctor and this prisoner had a four-year history and the first time that this doctor met this particular patient was he had already been in jail for six months on a DUI taking the medication is annexed every day this doctor gets a job at the jail and he continues giving this guy his medication for six more months the way it works is that family members bring the medication to the doctor's it's not on the formulary of the jail family members bring it to the doctor an event occurred where the family members weren't going to bring it and it's noted at the in the record at page 221 that the doctor then says well I'm gonna have to take you off because there is no medicine three days later the family brings him medicine brings it to him at his outside job he takes two of them and brings it into the doctor the doctor notes in the record that you're caught taking medicine that I that I'm taking you off of now I'm taking you off of this and all your medicine but isn't that I think the four-year course of action in a way works against you because he's treated him for four years and he doesn't and he knows in the four years well I know he's in and out of jail over that period and the doctor is in and out of employment also he doesn't work sometimes when mr. Burdett is back at the jail he sees them three years after the first event he sees in three years right but all that but on the previous times when he put him on the drug holiday as it were I think as it's the the two times I mean is there any evidence not not not whether that's that's what we obviously have to do not the first time not the first time in 1997 there's no evidence of a seizure okay the second time that he took him off he was only in jail for three days so he was not taken off completely off the drug before he was back out and being treated by his normal physician the the third time is the time that caused the problem well we know or is there anything in the record that says the seizure came from taking him off the drug or the seizure came from the imprimand which he was taking or what is that it I couldn't find where that really was discussed in the record you can you tell me about that it's we never got that far in the case to there's declaration saying that in their opinion it's likely that taking them off Xanax that quickly caused a seizure but that still doesn't that still doesn't get you to the indifference I mean creating establishing that link would be something that you'd have to do in a med mal suit but how would that establish let's say it did cause it but where is that you know there are things that happen that doctors do that are wrong that does cause injury to people or it ends up being the case but how's that indifference there's a couple of ways that the indifference showed up one in the way the doctor took him off without telling anybody on the staff to watch out for this particular critical period of time which the manufacturer says to the doctor is 24 to 72 hours after cessation there's no indication in fact there's nothing in his record that says he tells the nursing staff to look out for this guy the nursing the nursing staff doesn't even know that this person is being reduced off a drug that could cause this type you're not claiming medical indifference on the part of nurse Bobby even though you're taking fault with her the way she treated him but she's not a defendant right that's right the only defendant is who is the doctor the county claims right do you want to I know you want to save well you're just you have a little bit of time I'll I'll give you a minute on rebuttal all right thank you may it please the court my name is Patrick Lanius and I represent the Apple II dr. Lancaster they're really there is no deliberate indifference to any serious medical need when mr. Burdett comes in the jail in the middle of November of 2000 dr. Lancaster meets him he tells him he has a panic attack and that's his medical need dr. Lancaster prescribes imipramine wants to get him off the addictive substance Xanax knows him from years past a successfully weaned him in 1997 he was in the jail for six months after being weaned off the drug with no seizures or other problems in 2000 he was back in in March and it was more than three days he tapered him off for over a week this time he comes in and he's going to taper him off again and he has said that he knows there's a risk it's point four we submit that's not a substantial risk but nonetheless he acknowledges the risk and not with deliberate indifference but instead he carefully tapers it for a longer period of time this time in order to purposely avoid the risk of seizure associated with taking patients off these drugs so what does point four mean or four patients out of every thousand taking this drug yes yes your honor and that's after quick or immediate cutting them off the way to deal with it and the recommendations across the board are don't make him go cold turkey taper them and that's what he did he saw him again the other mental health staff saw him there was never an indication that he had another serious medical need in connection with the tapering or anything else well why was he then given imprimine because the doctor was addressing his complaints of a panic attack condition this was the letter mean is a depression drug well your banish is more of a drug for panic as I understand it well in nipper mean there's a different schools of thought dr. what is the record show dr. law talk says that it's an old-fashioned drug that he doesn't prefer dr. Lancaster testified it is a drug that can be used appropriately and effectively for panic attacks and I believe there may be another declaration in support of the limited to for purposes of deciding this case yes your honor so but then counsel tends to confuse the issues and when you read through his briefs such as his opening brief page 15 he's talking about bigger staffs nurse Bobby's response to the problems that very morning on December 2nd when she was called in by the jailers saw him concluded he didn't she did not need to call a medical doctor and then he comes into the pill line at 630 and collapses and has his injury dr. Lancaster has no subjective awareness that these problems are going on she never calls him so he can't be held to be deliberately indifferent to any medical need associated with this reaction occurring at that time instead what he has done is is there any evidence in the record that he had knowledge of that absolutely none your honor in fact it's all to the anybody Bobby bigger staff decided this patient's not in big problem I don't need to call him in the last two visits to mental health people in the record at 246 for example the licensed clinical social worker states that he does not appear to be in any obvious distress and that's on November 27th on December 1st the day before this he sees the licensed psych psychiatric nurse and he says broad-effect alert and oriented pleasant cooperative so dr. Lancaster has never been deliberately indifferent to any medical attention and he should not be held liable for the claim of violating this gentleman's due process right or the constitutional prescription against cruel and unusual punishment I want to ask one question where the drugs being supplied by the jail or by the family this when on this occasion he was arrested in Montana and transported to he brought his own supply when they bring him into the jail they take those drugs so they drugs were there in the descent for me who brought that well the impermanent was provided by the county jail through their formulary and pharmacy their bad doctor so Xanax was available if the doctor wanted it true okay thank you thank you morning your honors my name is Michael beams and I represent the county defendants and this will be brief because I think we're sharing our time the plaintiffs claim against the county defendants fails for two reasons two fundamental reasons number one since dr. Lancaster's decision to taper Burdett's Xanax was not the result of deliberate indifference it was therefore not unconstitutional there's no liability under Manel if the act complained of is not unconstitutional number two this gets us to the drug holiday issue even if the county of Butte had a drug policy a drug holiday policy dr. Lancaster was not following it that is based on the plaintiff's own admission in response to the defendant's statement of undisputed facts the drug holiday wasn't the basis for dr. Lancaster's actions we have the undisputed fact that dr. Lancaster was tapering mr. Burdett from his Xanax and at the same time replacing that with a nipper mean that does not even fall within the definition of what's been described as the drug holiday is there any written policy on the record there's no no and that I'm using this just for argument there's that was mentioned it with the the declarations or the evidence that was presented there is no no there is no record that there is actually a drug holiday policy the defendant Butte County wasn't aware that there was anything that was being described as a policy I think they there was tests there was I can't remember if it was the way the declaration but there's that person persons yes all persons but did persons indicate that he never he reported complaints to he reported complaints to the county the the term drug holiday as we understand it was coined by either dr. Lancaster or somebody else early on it was just it was a treatment modality that was established by the medical professionals that were involved in treating the inmates at the county jail the county itself did not do anything to implement that policy it was not County employees that were using the policy the the only issue was really in terms of whether there was a policy or not did the county know that there was a treatment modality called drug holiday and should they have done something about that I'm we're just assuming for the sake of argument what if there was it's not at issue here there is no causal connection between any drug holiday policy even if one existed and the plaintiff's injuries based on plaintiff's own admissions and the facts of this case so on that I would submit it thank you all right you have one minute for rebuttal just backtrack the I'm giving the appellant one minute for rebuttal certainly they the statement that we admitted that there was no policy we started this case thinking the county had the policy and the doctor followed it through discovery we found it was the doctor had the policy and the shift then goes to the county acquiescing to it yes all persons told the county yes the county knew there was a policy and this doctor was it was his policy how did the county know there was such a policy that the testimony of Paul persons who was a an attorney who had filed a jail conditions class action against the county and was monitoring county jail conditions reported on a periodic basis he reported that inmates complained about not getting their drugs right so they were aware of it so you are aware well they didn't say drug holiday did they he they just the inmates complained they didn't get their was that but the term has always been drug holiday that's what we were told it was when we first started that was called drug holiday well but did persons tell the county your Paula your policy of drug holiday what is your evidence show on that isn't it that he reported complaints that people didn't get their drugs right you're right okay I mean I just want to I want to know what holiday but the phrase drug holiday is definitely used by the by the doctor and but all right you they knew the doctor was doing something whether they call it drug holiday all right well thank you for your argument your time is expired all right this matter will now stand submitted next case on calendar is Greg on a nickel off I have a lova versus John Ashcroft cases number 0 3 7 1 5 0 7 0 3 7 1 5 0 8 0 3 7 1 5 1 3 those matter have been those those cases are presently submitted on the briefs in this matter the court will be in recess just briefly and then we'll return and continue with the calendar you yeah oh no no it was ready I got it Oh all right we're back in session I I understand we were looking out here and I didn't know that you'd be here we have a number of visitors is that from is and where is that and what year students do we have well thank you for joining us so we always like to see students here I I know it's probably not quite as it's every bit as important if not more important and that you know we thank all of the the council for the fine arguments today but I think probably as you've seen in appellate courts we're not doing the trials we're not actually hearing the witnesses or doing any of that that's already happened before people get here in front of us so we're dealing with the legal issues and I know sometimes if you haven't read the briefs before which we all have it it doesn't maybe sound quite as exciting or as quick-moving but it's really I see a lot of heads nodding there but the but by the same token it's actually quite interesting if you're you're able to read everything before and notice the focus on it and I'm glad that you know what a remand is even though probably that may not have been an issue that you were aware of but the federal courts have been waiting for the Supreme Court to rule about the federal guidelines and what we're supposed to do and we got two days ago I guess or we got 128 page opinion which everyone's trying to digest and figure out what's going on so the lawyers do the best to tell us what they think happened and we're you know a lot of times there's a period in the law after a big decision comes about that we talk a lot about it in the courts and decide how what the Supreme Court meant when they did it anyway I would like to call the next matter and that's John versus Ashcroft 0 3 7 1 8 3 7 good morning good morning your honor is Mark Vanderhout appearing on behalf of mr. John who's here in
judges: Bright , Tashima, Callahan